# IN THE COURT OF APPEALS OF IOWA

No. 15-1150
Filed June 29, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KRISTINA ANN MANASIL,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for O'Brien County, Don E. Courtney, Judge.

Kristina Ann Manasil appeals her conviction and sentence of arson in the first degree and fraudulent insurance claim submission. **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger and Kevin R. Cmelik, Assistant Attorneys General, for appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Kristina Ann Manasil appeals her conviction and sentence of arson in the first degree and fraudulent insurance claim submission. Manasil raises two issues on appeal: (1) the district court erred in failing to find there was insufficient evidence that the presence of a person in the property could have been reasonably anticipated and (2) the district court erred by ordering Manasil to pay a surcharge on the insurance fraud count. Because the surcharge imposed does not apply to the code section under which Manasil was convicted, we vacate that portion of her sentence. On her remaining claim, we affirm.

## I. Background Facts and Proceedings

In 2010, Manasil purchased Budd-Z's Sports Bar and Grill with her husband, Jon. They insured the business for approximately $1.2 million. The couple divorced in 2013 and agreed to sell the business. In May 2013, they entered into a purchase agreement with potential buyers. The buyers were to assume the business's debt and pay an additional $100,000 to be split between Manasil and Jon. On May 14, 2013, the building burned down.

Around 5:30 or 6:00 p.m. on May 14, 2013, two customers were in Budd-Z's and noticed the smell of something burning. The smell intensified, and an employee came to their table and apologized, indicating he had burned something. The customers left the premises at approximately 6:20 or 6:25. The building was engulfed in flames by 6:44 p.m.

Adam Sickles, Manasil's former boyfriend, and Thomas Hansen, a Budd-Z's employee, both generally testified a fire had started accidently in a box in the storage room. When Sickles went to extinguish the fire, Manasil instructed him

to put paper in the box, light it on fire, and let the building burn down. Everyone left the building, and Budd-Z's closed early around 6:35.

After the fire, Manasil submitted a claim to her insurance.

A jury found Manasil guilty on May 5, 2015. Manasil appeals.

## II. Standard and Scope of Review

Sufficiency-of-the-evidence claims are reviewed for correction of errors at law. *See State v. Vance*, 790 N.W.2d 775, 783 (Iowa 2010). "We will sustain the jury's verdict if it is supported by substantial evidence." *Id.* "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Jorgensen*, 758 N.W.2d 830, 834 (Iowa 2008)). Direct and circumstantial evidence are equally probative. *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011).

We review challenges to the legality of a sentence for correction of errors at law. *State v. Seats*, 865 N.W.2d 545, 553 (Iowa Ct. App. 2010) ("We use the correction of errors at law standard when the statute does not authorize the sentence.").

## III. Analysis

### A. Sufficiency of the Evidence

As provided by the jury instructions, the State was tasked with proving, in relevant part, that Manasil caused a fire with the intent to damage the property, that "[t]he presence of a person in the property could have been reasonably anticipated,"[1] and that an insurer was exposed fraudulently to risk of loss or that

---

[1] At the time of the offense, section 712.2 provided, in relevant part, "[a]rson is arson in the first degree when the presence of one or more persons can be reasonably

these acts unreasonably endangered the property or life of another. Manasil challenges only the element regarding the presence of a person in the property.

The testimony at trial establishes the customers were in the building until approximately 6:20 or 6:25 p.m. The building was closed by approximately 6:35 p.m. Sickles testified two female patrons were in the bar when he and Manasil arrived and headed to the storage room and that, while in the storage room, he attempted to pour water on the remaining embers but was stopped by Manasil and told to restart the fire. Sickles indicated they were in the storeroom for only minutes before the fire was set. When asked what he saw after leaving the storage room, Sickles indicated, "I think the ladies had already left at that point." He further testified the building was open for business, the door was unlocked, and a customer could have walked in at any time. Sickles recalled they locked the door when the business was closed early.

Hansen also testified at trial as follows:

> Q. . . . When [Manasil] came in with [Sickles], who was in the establishment? A. Justin, myself, Aaron and two ladies eating in the bar area.
> . . . .
> Q. And what happened next? A. They—[Manasil] called us to the back, into the storage room again to discuss the fire.
> . . . .
> Q. And were the customers still in the restaurant? A. They were.
> Q. And so who met in the storage room? A. [Sickles], myself, Aaron, Justin and [Manasil].
> Q. And what happened in the storeroom? A. We—it was discussed to start the fire back up.
> Q. What was said by Ms. Manasil? A. Basically, that we—she would like to start the fire back up and get everybody out.
> Q. Were the customers still in the building? A. Yes.

---

anticipated *in or near* the property which is the subject of the arson." Iowa Code § 712.2 (2013) (emphasis added). However, the jury instruction omitted the phrase "or near."

> Q. What happened then? A. [Sickles] reached up with a lighter and reignited the flame.
>
> . . . .
>
> Q. And where did you go? A. We went back to the kitchen area, Justin and myself.
>
> . . . .
>
> Q. Were the customers still in the bar when you went by? A. To my knowledge, they were.
>
> Q. And that was after you saw [Sickles] li[ght] a fire? A. Yes.[2]

In addition, witnesses testified the building was open for business and customers were usually on the premises at that time.

Manasil relies upon *State v. Benson*, No. 04-1036, 2006 WL 1229992 (Iowa Ct. App. Apr. 26, 2006), to support her claim she could not have reasonably anticipated a person would be on the property. In *Benson*, we concluded the defendant could not have reasonably anticipated another person would have been in the property where the property was the defendant's house, he was the sole resident of the home, he had recently changed the locks to the house, and he had no reason to believe another party would gain entry to the house. *Id.* at *4. This case is not analogous. Here, there was testimony establishing customers were present and the building was open for business. On this record, and viewing the evidence in the light most favorable to the State, there is substantial evidence upon which the jury could find the presence of a person in the property could have been reasonably anticipated. *See State v. Vaughan*, 859 N.W.2d 492, 498 (Iowa 2015) (finding evidence was sufficient where, in part, the defendant's mother was in the home at the time the fires were set in the home and detached garage).

---

[2] Also in evidence was a video clip of a police interview of Hansen in which he stated he believed the women had left before the fire was set and the women were not in danger.

**B.    Surcharge**

As part of her sentence, Manasil was required to pay a law enforcement initiative surcharge of $125, pursuant to Iowa Code section 911.3.    Manasil contends the district court erred in imposing this surcharge; the State also requests that the court sever that portion of the sentence, acknowledging that the statute does not apply to Manasil's offense.    The surcharge was applied to Manasil's conviction for insurance fraud under Iowa Code section 507E.3(2)(a). Criminal violations under Iowa Code chapter 507 do not fall within the province of section 911.3.    *See* Iowa Code § 911.3 (providing "the court or clerk of the district court shall assess a law enforcement initiative surcharge of one hundred twenty-five dollars if an adjudication of guilt . . . has been entered for a criminal violation under . . . [c]hapter 124, 155A, 453B, 713, 714, 715A, or 716 6 [or] . . . [s]ection 719.7, 719.8, 725.1, 725.2, or 725.3").    Accordingly, we find the district court erred when it imposed this surcharge and vacate that portion of Manasil's sentence.

**IV.    Conclusion**

We affirm Manasil's conviction but vacate the provision of her sentence imposing a law enforcement initiative surcharge of $125 and remand for the clerk of court to correct the record.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**